UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

           Plaintiff,

v.

Todd Richard Ladoucer,

           Defendant.

**MEMORANDUM OPINION AND ORDER**
Crim. No. 07-165(1) ADM/JSM

_____

Erica H. MacDonald, Esq., and Kimberly A. Svendsen, Esq., Assistant United States Attorneys, Minneapolis, MN, on behalf of Plaintiff.

Todd Richard Ladoucer, *pro se*.

_____

**I. INTRODUCTION**

This matter is before the undersigned United States District Judge for consideration of Defendant Todd Richard Ladoucer's ("Defendant") September 12, 2007, *Pro Se* Objections [Docket No. 98] and September 16, 2007, Objections [Docket No. 105][1] to Magistrate Judge Janie S. Mayeron's August 30, 2007, Order [Docket No. 89] and Report and Recommendation ("R&R") [Docket No. 91]. Defendant has also brought a *pro se* Motion for Continuance and Waiver of Speedy Trial [Docket No. 140]. The August 30, 2007, Order denies Defendant's Motion for Discovery [Docket No. 26], Motion for a Bill of Particulars [Docket No. 42], Motion

---

[1] At Defendant's request, Defendant's court-appointed counsel was relieved of his responsibilities on September 25, 2007, and Defendant is proceeding *pro se*. Defendant's former counsel filed the September 16, 2007, Objections on Defendant's behalf. Defendant filed the September 12, 2007, *Pro Se* Objections even though he was then represented by counsel. For convenience, the September 12, 2007, Objections are referred to as Defendant's "*Pro Se* Objections," and the September 16, 2007, Objections are referred to as Defendant's "Objections." The merits of all of Defendant's motions, whether brought by former counsel or *pro se*, will be addressed.

for Discovery and Inspection of Products and Records of Electronic Surveillance [Docket No. 29], Motion to Sever Counts [Docket No. 39] and Motion to Sever Defendants [Docket No. 40]. The R&R recommends denial of Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 33] and Motion to Suppress Eyewitness Identification [Docket No. 34]. For the reasons set forth below, Defendant's Objections are sustained in part and overruled in part, Defendant's *Pro Se* Objections are overruled, and Defendant's Motion for Continuance is denied.

## II. BACKGROUND

**A.    The Gun Transaction**

On July 3, 2007, Special Agent Andrew Hromyak of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") testified that in the Fall of 2006 the St. Paul Police Department and ATF set up a storefront operation on the east side of St. Paul. Tr. [Docket No. 67] at 50. The St. Paul Police Department and ATF utilized a confidential informant ("CI") to operate a thrift store. Id. The store was equipped with cameras designed to look like motion detectors and microphones. Id. at 51. The CI consented to recording transactions in the store. Id. By early October 2006, Jeanne Finch ("Finch"), who previously operated a thrift store in St. Paul, entered a cooperative arrangement with the CI to sell her own items in the store. Id. at 51-52.

The CI informed certain people at the store and in the surrounding neighborhood, including Finch, that he desired to purchase a gun but he was legally prohibited from doing so. Id. at 52-53. On October 24, 2006, Finch informed the CI that her friend Gloria Forga knew of someone who had a couple of guns to sell. Id. at 53. The CI disclosed this information to Special Agent Hromyak, who instructed the CI to make arrangements to view the guns at

Forga's apartment.  Id. at 53.  Later that same day, the CI went to Forga's apartment on Lawson Avenue in St. Paul, called Special Agent Hromyak's number, and pretended to speak to a gun buyer.  Id. at 53-54.  Special Agent Hromyak instructed the CI to arrange a deal for the following day at the store so that it could be captured on videotape.  Id. at 54.

   Shortly thereafter, Special Agent Hromyak received another call from the CI, but no one responded to Special Agent Hromyak.  Id.  Special Agent Hromyak heard a conversation between the CI and another male, and it sounded as if they were in a moving car.  Id.  Special Agent Hromyak heard the CI say he was prohibited from possessing firearms because he had been convicted of domestic violence.  Id. at 55.  Special Agent Hromyak also heard the CI ask about the other person's felony convictions.  Id.  Although he could hear a male voice respond, Special Agent Hromyak could not hear the specifics of the response.  Id.  At the time, Special Agent Hromyak did not know the identity of the other male.  Id. at 88.  At the July 3, 2007, hearing, Special Agent Hromyak testified that Defendant's voice is consistent with the voice he heard during the phone call.  Id. at 123.  Neither of the phone calls on October 24, 2006, was recorded.  Id. at 54.

   Later that day, the CI called Special Agent Hromyak and stated that he was alone and had two guns in his possession.  Id. at 55-56.  The CI informed Special Agent Hromyak that he would pay $600 for the guns at a meeting at the thrift store on October 25, 2006.  Id. at 56.  The CI would pay Finch $50 for brokering the deal.  Id.  On October 25, 2006, law enforcement agents met with the CI prior to the scheduled gun transaction to provide him with the necessary funds and instructions.  Id.  Agents were placed near the thrift store, and other agents were stationed at an off-site listening facility to monitor the transaction, which was recorded.  Id.

3

Subsequently on October 25, 2006, Finch, Defendant, and another individual identified as FNU LNU entered the store and remained for approximately twenty minutes. Id. at 56-57. Finch, Defendant, and FNU LNU discussed the guns and the fact the guns were stolen. Gov't Hr'g Ex. 1. The CI gave $600 to Defendant as payment for the guns, and the CI, Finch, and Defendant discussed Finch's $50 broker's fee. Id. After the October 25, 2006, meeting, law enforcement agents followed Finch's car, which contained Finch, Defendant, and FNU LNU, to the Lawson Avenue address where Forga lived. Tr. at 95-96.

**B.    The Confidential Informant's Photographic Identification**

On March 5, 2007, Special Agent Hromyak and a St. Paul Police officer met with the CI. Id. at 64, 66. Prior to the meeting, the CI described the male engaged in the gun transaction by stating that the individual's first name was Todd, the individual had a shaved head, two tattoos, a stocky physique, and the individual was the boyfriend of Gloria Forga, who resided on the 600 block of Lawson Avenue in St. Paul. Id. at 65. During the meeting, Special Agent Hromyak placed a booking photograph of Defendant, with the name obscured, in front of the CI and asked the CI if he could identify the person in the photograph. Id. at 66. The CI identified the person as Todd Ladoucer, but with a lot more hair. Id. When asked about his level of certainty, the CI responded that Defendant was the man the CI paid for the guns. Id. at 66, 94.

**C.    The May 18 and 24, 2007, Interviews**

On May 18, 2007, Special Agent Hromyak and Special Agent Jamie Severson, also of the ATF, interviewed Defendant at the Ramsey County Workhouse, where Defendant was detained on state charges. Id. at 69. The agents intended to arrest Defendant on federal charges at the conclusion of the interview. Id. at 98. The agents were dressed casually and neither agent wore

a weapon during the interview. Id. at 69-71. The interview room was approximately eight feet by eight feet and contained a small desk. Id. at 70. Defendant, who was not restrained, sat at one end of the desk, Special Agent Hromyak sat across from Defendant, and Special Agent Seversen sat with his back against the wall. Id. Special Agent Hromyak questioned Defendant but failed to provide Miranda warnings. Id. at 71. During the interview, Defendant admitted he was the individual engaged in the gun transaction and that he dated Gloria Forga. Id. at 128. Neither Defendant nor the agents yelled, and the agents did not threaten Defendant. Id. at 72. Defendant neither asked for an attorney nor did he refuse to answer any questions. Id. at 72-73. Special Agent Hromyak observed that Defendant was of average intelligence, did not appear to be intoxicated, and gave appropriate responses to questions. Id. at 73-74.

When the interview concluded, the agents discovered that the necessary writ to arrest Defendant on federal charges had not arrived. Id. at 74. Special Agent Hromyak told Defendant the agents would have to leave him at the Ramsey County Workhouse and that they "might have to come back in a week or so." Id. Special Agent Hromyak testified he realized in the parking lot afterwards that he forgot to provide Miranda warnings to Defendant. Id. at 71.

Special Agent Hromyak returned to the Ramsey County Workhouse on May 24, 2007, to arrest Defendant and bring him to federal court for an initial appearance. Id. at 75. This time, Special Agent Hromyak was accompanied by ATF Special Agent Nicholas Garlie rather than Special Agent Severson. Id. at 75-76. The interview occurred in the same room as the May 18 interview. Id. at 75. Prior to speaking with Defendant, Special Agent Hromyak read Defendant his Miranda rights and Defendant verbally indicated he understood those rights. Id. at 76. However, Defendant refused to sign an ATF form waiving his rights because he believed that

signing the form would be an admission of guilt. Id. Having received verbal acknowledgment that Defendant understood his rights, Special Agent Hromyak proceeded to question Defendant for approximately ten minutes. Id. at 78, 125-26. The circumstances of the May 24 interview were similar to the May 18 interview. Neither agent yelled at Defendant. Id. at 78-79. Defendant, who again was unrestrained, was able to answer questions and did not appear intoxicated. Id. Defendant refused to answer a couple of questions, stating he "didn't want to get into it" or that he had discussed the matter previously. Id. at 77. Defendant did not request counsel. Id. at 77.

After the interview concluded, the agents secured Defendant in leg irons and handcuffs and transported him in Special Agent Hromyak's vehicle to the federal courthouse in Minneapolis. Id. at 79. Special Agent Hromyak testified he did not question Defendant during the approximately half-hour drive, but that the two engaged in conversation on a variety of topics. Id. at 80. During the conversation, Defendant said he wished he had not gone to Forga's residence after the guns were transferred to the CI. Id.

**D.     The Indictment and Superseding Indictments**

On May 15, 2007, a federal grand jury returned an Indictment [Docket No. 1] charging Defendant and Finch with Sale of a Firearm to a Prohibited Person, in violation of 18 U.S.C. §§ 2, 922(d), and 924(a)(2), and charging Defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). On July 24, 2007, the grand jury returned a Superseding Indictment [Docket No. 75] charging Defendant and Finch with an additional count of Sale of a Stolen Firearm, in violation of 18 U.S.C. §§ 2, 922(j), and 924(a)(2), and charging Finch with three counts of Distribution of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(C). On September 12, 2007, Defendant filed a *pro se* motion [Docket No. 97] to apply his previous motions to the Superseding Indictment. On September 18, 2007, the grand jury returned a Second Superseding Indictment [Docket No. 104] that adds Anteneh Mekonnen ("Mekonnen") as a third co-defendant on the count of Sale of a Stolen Firearm. Because the substantive charges against Defendant are the same in the Superseding and Second Superseding Indictments, the merits of all of Defendant's arguments will be addressed, and the Court will refer only to the Second Superseding Indictment.

### III. DISCUSSION

**A.    Objections to the R&R**

   **1.    Standard of Review**

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1). The district judge must make an independent, de novo determination of those portions of the R&R to which a party objects. Fed. R. Crim. P. 59(b)(3).

   **2.    Defendant's Motion to Suppress Statements, Admissions and Answers**

      **a.    May 18, 2007, Statements**

The Government concedes that Defendant's May 18, 2007, statements are inadmissible in its case in chief because Defendant was not provided Miranda warnings. Gov't's Resp. to Def.'s Objections [Docket No. 131] at 15. However, the Government intends to use Defendant's May 18 statements to impeach and cross-examine Defendant should he testify at trial. In response, Defendant moves to suppress his May 18 statements on the grounds they were involuntarily

7

made.  Judge Mayeron concluded that the May 18 statements were voluntary.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  United States v. Hyles, 479 F.3d 958, 966 (8th Cir. 2007) (internal quotation marks and citation omitted).  After reviewing Special Agent Hromyak's testimony regarding the circumstances of the May 18 interview, the Court agrees with the R&R that there is no evidence that Defendant was coerced or that Defendant's will was overborne.  In his Objections, Defendant refers to Special Agent Hromyak's testimony that the interview room "had almost like a children's school desk."  Tr. at 70.  Defendant argues that "[p]lacing a person in a 'short chair' can cause them to feel minimized," and that this circumstance, combined with the jailhouse setting and the presence of two federal agents, created a coercive environment.  Objections at 8-9.  However, under the circumstances discussed in part II-C above, the jailhouse setting and presence of ATF agents did not create a coercive environment.  Any disparaging effect from the small desk and chair was mitigated by Special Agent Hromyak also sitting at the same desk.  The Court finds that the R&R correctly concluded that Defendant's statements during the May 18, 2007, interview were voluntarily made.

      **b.**     **May 24, 2007, Statements**

Defendant also objects to Judge Mayeron's recommendation that Defendant's motion to suppress statements made on May 24, 2007, be denied.  Defendant argues his May 24 statement should be suppressed because it was a continuation of the May 18 interview in which Special Agent Hromyak failed to give Miranda warnings to Defendant.  In response, the Government argues that the May 24 statement is admissible because Special Agent Hromyak's failure to

provide the Miranda warnings on May 18 was not deliberate, but rather was due to an oversight.

The governing Supreme Court decision is Missouri v. Seibert, 542 U.S. 600 (2004). There, a police officer deliberately withheld Miranda warnings until Seibert confessed to criminal activity. Id. at 604-06. After Seibert confessed, the officer obtained Seibert's signed Miranda rights waiver and then used Seibert's pre-warning confession to elicit a repeat post-warning confession. Id. Seibert's second confession was admitted at trial. Id. at 606. A divided Supreme Court held the second confession was inadmissible because the officer's interrogation technique rendered the Miranda warning ineffective. Id. at 617. A plurality of four justices provided a number of factors, such the timing and similarity of the different stages of questioning, for courts to consider every time a suspect gives an unwarned confession, is warned, and then confesses again. Id. at 615-16.

However, Justice Kennedy, providing the fifth vote for the Court's judgment, decided the case on narrower grounds. Rather than have courts determine whether midstream Miranda warnings are effective every time a post-warning confession follows an unwarned confession, Justice Kennedy would suppress post-warning statements only where police intentionally use a two-step interrogation technique. Id. at 621-22 (Kennedy, J., concurring in the judgment). Because Justice Kennedy provided the necessary fifth vote and he resolved the case on narrower grounds than the plurality, Justice Kennedy's reasoning controls. United States v. Ollie, 442 F.3d 1135, 1141 (8th Cir. 2006).

Applying Seibert, the Eighth Circuit held in Ollie "that when a defendant moves to suppress a post-warning statement that he contends was given as part of a question-first interrogation, the prosecutor most prove, by a preponderance of the evidence, that the officer's

9

failure to provide warnings at the outset of questioning was not part of a deliberate attempt to circumvent *Miranda*." Id. at 1142-43. To satisfy its burden, the Government relies exclusively on Special Agent Hromyak's testimony that he forgot to provide Miranda warnings to Defendant on May 18, and that he realized his omission in the parking lot of the Ramsey County Workhouse after the interview concluded. Tr. at 71-72. However, this testimony, by itself, does not satisfy the Government's burden. If it did, then officers could employ the question-first technique with impunity by simply claiming that a failure to provide warnings was an oversight. Instead, the Court must also consider the surrounding facts and circumstances to determine whether the Government proved by a preponderance of the evidence that Special Agent Hromyak's failure to provide Miranda warnings was not deliberate.

Special Agent Hromyak expected to arrest Defendant on federal charges at the conclusion of the May 18 interview. The interview occurred in a controlled jailhouse setting. Thus there were no unusual, hurried, or exigent circumstances that might have caused Special Agent Hromyak to forget to provide Miranda warnings. More importantly, Special Agent Hromyak did not take any curative measures after he realized he failed to provide Miranda warnings. For example, although Special Agent Hromyak provided Miranda warnings to Defendant on May 24, Special Agent Hromyak did not inform Defendant of the previous failure to provide Miranda warnings on May 18. Such an act would provide necessary corroborative evidence that Special Agent Hromyak forgot to provide the warnings and did not deliberately attempt to circumvent Miranda. On the current record, the Government has not shown by a preponderance of the evidence that the failure to provide Miranda warnings was not deliberate. Accordingly, Defendant's May 24, 2007, statement is inadmissible during the Government's

case in chief.

Defendant also argues his May 24, 2007, Miranda waiver was not knowing and intelligent. A valid Miranda "waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). Defendant argues that his belief that signing the waiver form constituted an admission of guilt shows that he did not understand his Miranda rights and the consequences of waiving those rights. However, although Defendant was mistaken regarding the effect of signing a Miranda waiver, he verbally indicated he understood the Miranda warnings given by Special Agent Hromyak. The Court agrees with the R&R that Defendant's Miranda rights waiver was voluntary, knowing, and intelligent. Therefore, Defendant's May 24, 2007, statement may be used for impeachment and cross-examination purposes should Defendant testify at trial.

### 3. Motion to Suppress Eyewitness Identification

In the R&R, Judge Mayeron correctly concluded that Defendant's Motion to Suppress Eyewitness Identification should be denied. A Fifth Amendment due process challenge is evaluated in two steps. First, a court must determine if the identification procedure was "impermissibly suggestive." United States v. Donelson, 450 F.3d 768, 772 (8th Cir. 2006). If the answer is yes, then a court must examine the "totality of the circumstances to determine whether the suggestive procedures created a very substantial likelihood of irreparable misidentification." Id. at 773 (internal quotation marks and citation omitted).

As discussed above, on March 5, 2007, Special Agent Hromyak showed the CI a booking photograph of Defendant with Defendant's name obscured, and the CI identified the individual

as Todd Ladoucer.  Tr. at 66.  Although using a single photograph of a defendant for identification purposes with no accompanying photographs is often deemed impermissibly suggestive, see, e.g., United States v. Patterson, 20 F.3d 801, 806 (8th Cir. 1994), courts recognize that "when someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect, these concerns are absent." United States v. Dobbs, 449 F.3d 904, 909 (8th Cir. 2006).  The R&R correctly concludes that the identification was not impermissibly suggestive because the CI had spent significant time with Defendant on October 24 and 25, 2006, and the CI accurately stated Defendant's first name and described Defendant's physique before identifying Defendant.  Tr. at 65.  The informant also knew Defendant was the boyfriend of Gloria Forga.  Id.  On these facts, the circumstances of the photo identification were not impermissibly suggestive.

The R&R also correctly concluded that even if the circumstances of the identification were impermissibly suggestive, the circumstances did not create a very substantial likelihood of misidentification.  "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Again, the CI spent significant time with Defendant during the gun transaction on October 24 and 25, 2006.  Although over four months elapsed between the CI's encounters with Defendant and the March 2007 identification, Judge Mayeron correctly concluded that the elapsed time did not render the identification unreliable, especially because the CI provided a

detailed physical description of Defendant. See United States v. Richardson, 651 F.2d 1251, 1255 (8th Cir. 1981) (concluding that passage of three months between crime and photographic identification did not render identification unreliable).

In his Objections, Defendant questions the CI's level of certainty. Objections at 13. However, Special Agent Hromyak testified he verified that the CI was sure about the photographic identification. Tr. at 94. The R&R correctly concluded that Defendant's Motion to Suppress Eyewitness Identification should be denied.

**B.      Defendant's *Pro Se* Objections to the R&R**

In his *Pro Se* Objections, Defendant itemizes nine factual statements in the R&R that he disputes. The Court adopts Defendant's numbering scheme for the purposes of addressing his *Pro Se* Objections. In objections three through six, Defendant, based on his own recollection, disputes the accuracy of portions of Special Agent Hromyak's testimony at the July 3, 2007, hearing before Judge Mayeron. However, Defendant chose not to testify at the hearing. Therefore, Defendant's factual assertions cannot be considered.

In objections one, two, eight, and nine, Defendant argues certain statements of the CI, as recounted by Special Agent Hromyak, are inconsistent with the CI's written statements. However, the record supports Judge Mayeron's factual findings. Defendant may use prior inconsistent statements to impeach witnesses at trial.

Finally, in objection seven, Defendant argues that Special Agent Hromyak's testimony that he did not question Defendant during the drive to the federal courthouse after the May 24, 2007, interview is inconsistent with Special Agent Hromyak's written report. Presumably, Defendant is arguing that new Miranda warnings were necessary for the alleged questioning

during the car ride.  However, the Court has already determined that Defendant's May 24 statements are inadmissible during the Government's case in chief.  Therefore, Defendant's *pro se* objection seven is moot.

The Court overrules all of Defendant's Objections except for the objection regarding the suppression of the May 24, 2007, statement, which is sustained.  All of Defendant's *Pro Se* Objections are overruled.  The R&R is adopted except for its discussion of the May 24, 2007, interview.  Defendant's Motion to Suppress Statements, Admissions and Answers is granted regarding the admissibility of the May 24, 2007, statement during the Government's case in chief, and denied in all other respects.  Defendant's Motion to Suppress Eyewitness Identification is denied.

C.     **Objections to the Order**

   1.     **Standard of Review**

"A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. . . . The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous."  Fed. R. Crim. P. 59(a).

   2.     **Motions for Discovery and for a Bill of Particulars**

Defendant objects to the denial of his Motion for Discovery and his Motion for a Bill of Particulars.  These motions are addressed together because they are premised on the argument that Defendant needs to discover the allegations and evidence against him that support the counts

of Sale of a Stolen Firearm and Sale of a Firearm to a Prohibited Person.[2] However, the Second Superseding Indictment sets forth the essential facts of both offenses. See Fed. R. Crim. P. 7(c)(1). Further, Defendant has been provided with extensive discovery materials and Defendant has heard the detailed testimony of Special Agent Hromyak regarding Defendant's involvement in the offenses charged. See Tr. at 12, 49-135. This discovery satisfies the Government's disclosure obligations under Federal Rule of Criminal Procedure 16(a) and (c). The Second Superseding Indictment and the discovery materials enable Defendant to prepare a defense and avoid unfair surprise at trial.

In his Objections, Defendant argues "information produced in the indictment is insufficient to outline his connection to the present offenses. This is especially true with regard to knowing and intentional elements contained in the charges . . . ." Objections at 3. However, the Second Superseding Indictment adequately sets forth the intent necessary for the charged offenses, and the discovery materials and Special Agent Hromyak's testimony regarding Defendant's acts and statements adequately put Defendant on notice as to how the Government will prove Defendant's intent. Defendant's objections regarding the denial of his Motion for a Bill of Particulars and his Motion for Discovery are overruled.

### 3. Motion for Discovery and Inspection of Products and Records of Electronic Surveillance

Defendant moves for discovery of all electronic surveillance tapes from the CI's storefront operation from October 2006 to March 2007, including tapes on which Defendant

---

[2] Defendant filed his Motion for a Bill of Particulars before he was indicted on the count of Felon in Possession of a Firearm, and Defendant has not moved for a bill of particulars on the new count. Nevertheless, the Court finds that the Second Superseding Indictment states the essential facts of the offense and satisfies Federal Rule of Criminal Procedure 7(c)(1).

does not appear. Defendant argues that the tapes may contain exculpatory and impeachment material. However, relying on the Government's assurance that it will satisfy its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972), Judge Mayeron denied Defendant's motion. See United States v. Persico, 447 F. Supp. 2d 213, 217 (E.D.N.Y. 2006) (denying motion for discovery of electronic surveillance based on Government's assurances of compliance with its discovery obligations). The August 30, 2007, Order accurately set forth the law concerning access to electronic surveillance and has applied this law properly to the case at hand. This Court overrules Defendant's objection.

### 4.     Defendant's Motion to Sever Counts

Defendant objects to the denial of his motion to sever Count One, Sale of a Stolen Firearm, and Count Two, Sale of a Firearm to a Prohibited Person, of the Second Superseding Indictment.[3] Federal Rule of Criminal Procedure 8(a) provides that a defendant may be charged with multiple offenses in the same indictment "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The two counts against Defendant arise out of the same gun transaction. Therefore, Rule 8(a) is satisfied.

In his Objections, Defendant argues severance is necessary because he may wish to defend himself against Count Two by testifying regarding his knowledge of the CI's criminal history, while at the same time exercising his Fifth Amendment rights regarding Count One. "Prejudice sufficient to require separate trials on th[is] basis, however, may be established only

---

[3] The count of Felon in Possession of a Firearm was added after Defendant filed his Objections, and Defendant has not argued for severance of this count.

by 'a persuasive and detailed showing regarding the testimony [that the defendant] would give on the one count he wishes severed and the reason he cannot testify on the other counts.'" Closs v. Leapley, 18 F.3d 574, 578 (8th Cir. 1994), quoting United States v. Possick, 849 F.2d 332, 338 (8th Cir. 1988).  Defendant has failed to demonstrate that he has important testimony regarding Count Two but a strong need to refrain from testifying regarding Count One. Therefore, Defendant's objection to the failure to sever Counts One and Two is overruled.

    **5.**    **Defendant's Motion to Sever Defendants**

Defendant's objection to the denial of his Motion to Sever Defendants is based on the argument that he will be prejudiced at trial by the drug counts against Finch in the Second Superseding Indictment.  However, Finch entered a guilty plea on October 9, 2007.  Therefore, Defendant's objections regarding the severance of Finch are moot.[4]

**D.**    **Motion for Continuance**

Defendant moves for a continuance of the November 13, 2007, trial date "on the basis that more time is needed to pursue investigation of possibly exculpatory and material evidence necessary for adequate and compl[ete] presentation of the defen[s]e." Mot. for Continuance. Having reviewed the motions, files, and records herein, and considered the factors set forth in 18 U.S.C. § 3161(h)(8)(B), the Court denies Defendant's Motion.  Defendant fails to specify the new evidence he hopes obtain, nor does he provide a reason why he cannot obtain the evidence in the time that remains before November 13 trial date.  Defendant has not provided an adequate basis for a continuance.

---

[4] Defendant has not argued that his trial should be severed from Anteneh Mekonnen's trial.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Objections [Docket No. 105] to the Magistrate Judge's August 30, 2007, Order [Docket No. 89] and Report and Recommendation [Docket No. 91] are **SUSTAINED IN PART** and **OVERRULED IN PART**.  Defendant's May 24, 2007, statements are inadmissible during the Government's case in chief;

2.  Defendant's *Pro Se* Objections [Docket No. 98] to the Report and Recommendation are **OVERRULED**;

3.  The August 30, 2007, Order is **ADOPTED** in its entirety;

4.  The August 30, 2007, Report and Recommendation is **ADOPTED IN PART**;

5.  Defendant's Motion for Discovery [Docket No. 26] is **DENIED**;

6.  Defendant's Motion for a Bill of Particulars [Docket No. 42] is **DENIED**;

7.  Defendant's Motion for Discovery and Inspection of Products and Records of Electronic Surveillance [Docket No. 29] is **DENIED**;

8.  Defendant's Motion to Sever Counts [Docket No. 39] is **DENIED**;

9.  Defendant's Motion to Sever Defendants [Docket No. 40] is **DENIED**;

10. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 33] is **GRANTED IN PART** and **DENIED IN PART**;

11. Defendant's Motion to Suppress Eyewitness Identification [Docket No. 34] is **DENIED**; and

12. Defendant's Motion for Continuance and Waiver of Speedy Trial [Docket No. 140] is **DENIED**.

BY THE COURT:

       s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 17, 2007.